T.C. Memo. 2005-265

UNITED STATES TAX COURT

MICHAEL PAUL REMLER AND PAULINE M. VELEZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21868-03.            Filed November 17, 2005.

Michael Paul Remler and Pauline M. Velez, pro sese.

<u>Anthony J. Kim</u>, <u>Aaron Stonecash</u>, and <u>Paul R. Zamolo</u>, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>: Respondent determined deficiencies in
petitioners' Federal income tax of $8,546 and $4,750 for 1999 and
2000, respectively.  Respondent also determined a section 6662(a)

penalty for 2000.[1]  After concessions,[2] the issues for decision
are:  (1) Whether petitioners' special education activity was
engaged in for profit during 1999 and 2000 (years in issue), and
(2) whether petitioners are liable for an accuracy-related
penalty under section 6662(a) for 2000.

                         FINDINGS OF FACT

     Some of the facts have been stipulated and are so found.
The stipulation of facts and the attached exhibits are
incorporated herein by this reference.  At the time they filed
the petition, petitioners resided in Berkeley, California.

     Michael Paul Remler (Dr. Remler) and Pauline M. Velez (Dr.
Velez) (collectively referred to as petitioners) are husband and
wife.  During the years in issue, petitioners were employed full
time by the Department of Veterans Affairs.  Dr. Remler is a
neurologist and previously served as the child neurologist for

---

[1]  Unless otherwise noted, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  Petitioners conceded they were liable for increases to taxable income of:  (1) $8,920 and $10,903 for 1999 and 2000, respectively, resulting from disallowed deductions for real estate losses; (2) $11,570 and $24,639 for 1999 and 2000, respectively, resulting from disallowed deductions claimed in connection with petitioner Velez's Schedule C surgery activity; (3) $1,118 for 1999 resulting from a disallowed Keogh deduction; and (4) $3,249 for 2000 attributable to a State income tax refund.  The parties signed a Form 870, Waiver of Restrictions on Assessment and Collection of Deficiency in Tax, regarding the settled issues, and petitioners paid the additional tax liability in full prior to trial.

the Autism Diagnostic and Teaching Program (TEACCH) at the University of North Carolina.  Dr. Velez is a surgeon, and during the years in issue, she also ran a surgery practice.

Petitioners' son, GJR[3], was born on April 13, 1994.  GJR was diagnosed with autism in 1995, and his condition was classified as moderately severe in 1997.  From February 1997 to August 1998, GJR was enrolled in a behavioral intervention program with the Behavioral Intervention Associates (BIA).  BIA provided diagnostic and supervisory services to aid petitioners in educating GJR at home.  Petitioners also received training in special education methods from the Autism Institute of America (AIA).

From the spring of 1997 through November 2000, GJR was enrolled in different special education programs in the Berkeley Unified School District (BUSD).  Petitioners became progressively dissatisfied with the school-based programs.  In coordination with BUSD, petitioners developed an integrated afterschool program to supplement the school-based programs.

By November 2000, petitioners decided that GJR's needs could no longer be met in the school-based programs.  GJR was pulled from all school-based programs and was educated at home in what

---

[3] We shall refer to petitioners' son using only his initials.

petitioners call a "microschool".[4]  BUSD agreed to reimburse petitioners for GJR's special education expenses up to $44,000 per year in exchange for petitioners' releasing BUSD from any liability for failing to provide GJR with a "free and appropriate public education" (FAPE).

Petitioners did not spend much time teaching GJR in either the afterschool program or the microschool.  Instead, petitioners hired several people who were interested in being teachers, trained them using methods petitioners had developed or learned through BIA and AIA, and had them teach GJR.  Claudia Alexander (Ms. Alexander) was one of GJR's teachers from June 1998 through the years in issue.

Petitioners had two sources of funding for the afterschool program and the microschool, Regional Center and BUSD.  Regional Center, a California State organization that provides funding for qualifying families for special education needs, paid petitioners directly for a limited number of hours petitioners spent on GJR's education.  From June 1998 through November 2000, petitioners received indirect funding from BUSD channeled through Ms. Alexander.  BUSD paid Ms. Alexander, who would then sign her paychecks over to petitioners.  Petitioners would use the paychecks and additional funds to pay Ms. Alexander and the other

---

[4]  For purposes of clarity, the Court will use petitioners' terminology of afterschool program and microschool when referring to petitioners' home-schooling activities.

teachers at an agreed-upon hourly wage.  Beginning in November 2000, petitioners received direct reimbursement from BUSD, as described above.  GJR's education expenses exceeded funding for both years in issue, and petitioners paid out-of-pocket for the remainder.

GJR was the only student in petitioners' afterschool program and microschool.  Petitioners did not advertise or otherwise seek additional students.  Petitioners did not apply for or receive any grants during the years in issue.  Petitioners did not maintain a separate bank account for, or have any separate business assets dedicated to, the afterschool program or the microschool.

Petitioners timely filed joint Federal income tax returns for the years in issue.  Attached to each return was a Schedule C, Profit or Loss From Business, for petitioners' "special education" activity.  Petitioners deducted Schedule C losses with respect to the special education activity of $24,417 and $12,351, and reported adjusted gross income of $229,665 and $229,219 for 1999 and 2000, respectively.

On November 6, 2003, respondent sent petitioners a notice of deficiency for the years in issue.  Respondent determined that petitioners' special education activity was not a bona fide business activity entered into for profit and disallowed the claimed deductions.  Respondent also determined that petitioners

were liable for an accuracy-related penalty of $42 under section 6662(a) for 2000 based on petitioners' omission of a State income tax refund from their return.  In response to the notice of deficiency, petitioners filed their petition with this Court on December 24, 2003.

OPINION

A.  Petitioners' Special Education Activity

The first issue is whether petitioners' special education activity was an activity engaged in for profit during the years in issue.  Section 183(a) provides that if an individual engages in an activity, and "if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section."[5] Section 183(c) defines an "activity not engaged in for profit" as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

Section 162 allows the taxpayer to deduct expenses of carrying on a taxpayer's trade or business if those expenses are

---

[5]  Sec. 183(b)(1) provides that deductions which would be allowable without regard to whether such activity is engaged in for profit shall be allowed.  Sec. 183(b)(2) provides that deductions which would be allowable only if such activity is engaged in for profit shall be allowed "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1)."  Neither subsection is at issue in the instant case.

ordinary and necessary to the conduct of the trade or business. Paragraphs (1) and (2) of section 212 allow the taxpayer to deduct expenses incurred in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income.

A taxpayer must show that he engaged in an activity with an actual and honest objective of making a profit in order to deduct expenses of the activity under either section 162 or 212. Antonides v. Commissioner, 91 T.C. 686, 693 (1988), affd. 893 F.2d 656 (4th Cir. 1990); Beck v. Commissioner, 85 T.C. 557, 569 (1985); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Golanty v. Commissioner, 72 T.C. 411, 425 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). While the expectation of making a profit need not be reasonable, the facts and circumstances must indicate that the taxpayer entered into the activity, or continued it, with the objective of making a profit. Antonides v. Commissioner, supra at 694; Beck v. Commissioner, supra, Dreicer v. Commissioner, supra; Golanty v. Commissioner, supra at 425-426.

The question of whether a taxpayer engages in an activity with the intention of making a profit is one of fact to be resolved on the basis of all the surrounding facts and

circumstances.  <u>Antonides v. Commissioner</u>, <u>supra</u>; <u>Golanty v. Commissioner</u>, <u>supra</u>; <u>Jasionowski v. Commissioner</u>, 66 T.C. 312, 321 (1979).  Greater weight is given to objective facts than to a taxpayer's mere statement of intent.  <u>Antonides v. Commissioner</u>, <u>supra</u>; <u>Thomas v. Commissioner</u>, 84 T.C. 1244, 1269 (1985), affd. 792 F.2d 1256 (4th Cir. 1986).  Petitioners bear the burden of proving the requisite intention.  Rule 142(a).  The parties do not argue that the burden shifts to respondent under section 7491(a).

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of relevant factors which should normally be considered in determining whether an activity is engaged in for profit.  The factors include:  (1) The manner in which the taxpayer carries on the activity, (2) the expertise of the taxpayer or his advisers, (3) the time and effort expended by the taxpayer in carrying on the activity, (4) the expectation that assets used in activity may appreciate in value, (5) the success of the taxpayer in carrying on other similar or dissimilar activities, (6) the taxpayer's history of income or losses with respect to the activity, (7) the amount of occasional profits, if any, which are earned, (8) the financial status of the taxpayer, and (9) the elements of personal pleasure or recreation.  Sec. 1.183-2(b), Income Tax Regs; <u>Antonides v. Commissioner</u>, <u>supra</u> at 694 n.4; <u>Golanty v. Commissioner</u>, <u>supra</u> at 426.  No single factor

or group of factors is determinative.  Sec. 1.183-2(b), Income Tax Regs.; <u>Golanty v. Commissioner</u>, <u>supra</u>; <u>Dunn v. Commissioner</u>, 70 T.C. 715, 720 (1978), affd. 615 F.2d 578 (2d Cir. 1980).

Petitioners contend that they entered into the special education activity with the expectation of making a profit. Respondent contends that petitioners did not have the requisite profit motive.  To make our determination, we address the nine factors found in section 1.183-2(b), Income Tax Regs.

1.   <u>Manner in Which Petitioners Carried On the Special Education Activity</u>

The fact that the taxpayer carries on the activity in a businesslike manner and maintains complete and accurate books and records may indicate that the activity is engaged in for profit. Sec. 1.183-2(b)(1), Income Tax Regs.; <u>Elliot v. Commissioner</u>, 90 T.C. 960, 972 (1988); <u>Engdahl v. Commissioner</u>, 72 T.C. 659, 666 (1979).  Petitioners introduced evidence of checks issued to teachers and testified that they were required to provide expense reports in order to receive funding from BUSD and Regional Center.  Respondent concedes that petitioners kept adequate records.

When the taxpayer conducts the activity in a manner substantially similar to other activities of the same nature which are profitable, a profit motive may be indicated.  Sec. 1.183-2(b)(1), Income Tax Regs.; <u>Engdahl v. Commissioner</u>, <u>supra</u>.

Relevant indicators include advertising, maintaining a separate business bank account, the development of a written business plan, and having a plausible strategy for earning a profit. See Morley v. Commissioner, T.C. Memo. 1998-312; Butler v. Commissioner, 1997-408; De Mendoza v. Commissioner, T.C. Memo. 1994-314; Ellis v. Commissioner, T.C. Memo. 1984-50.

GJR was the only student in petitioners' afterschool program and microschool. Petitioners did not advertise or otherwise seek additional students. Petitioners did not maintain a separate bank account and did not have a written business plan. In addition, petitioners testified that they expected to make a profit. However, BUSD reimbursed petitioners only for special education expenses and Regional Center paid petitioners only for a limited number of hours worked. Petitioners testified that they could get additional funding through grants, but they did not apply for or receive any grants during the years in issue. Because their current funding was limited and petitioners did not seek additional funding, we find that petitioners did not have a plausible strategy for earning a profit.

The fact that petitioners did not advertise, maintain a separate bank account, have a written business plan, or have a plausible strategy for earning a profit, outweighs any positive inference made from petitioners' adequate records. We find that petitioners did not operate the special education activity in a

businesslike manner.  These facts weigh in favor of respondent.

2.  <u>Expertise of Petitioners or Their Advisers</u>

Preparation for the activity by extensive study of its accepted business, economic, and scientific practices, or consultation with those who are expert therein, may indicate a profit motive.  Sec. 1.183-2(b)(2), Income Tax Regs.; <u>Engdahl v. Commissioner</u>, <u>supra</u> at 668; <u>Lundquist v. Commissioner</u>, T.C. Memo. 1999-83, affd. 211 F.3d 600 (11th Cir. 2000).  Efforts to gain experience and a willingness to follow expert advice may indicate a profit motive.  <u>Dworshak v. Commissioner</u>, T.C. Memo. 2004-249; <u>Lundquist v. Commissioner</u>, <u>supra</u>.

Dr. Remler served as the child neurologist for TEACCH at the University of North Carolina.  Petitioners also received guidance and training in special education methods from BIA and AIA. While petitioners had no experience running a school, we find that Dr. Remler had expertise in dealing with child autism, and petitioners made efforts to gain experience in special education. These facts weigh in favor of petitioners.

3.  <u>Time and Effort Expended by Petitioners in Carrying on the Activity</u>

The fact that the taxpayer devotes much of his personal time and effort to carrying on an activity may indicate an intention to derive a profit, particularly if the activity does not have substantial personal or recreational aspects.  Sec. 1.183-

2(b)(3), Income Tax Regs.; <u>Lundquist v. Commissioner</u>, <u>supra</u>; <u>De Mendoza v. Commissioner</u>, <u>supra</u>. Petitioners both worked full time for the Department of Veterans Affairs. Dr. Velez also ran a surgery practice. Petitioners testified that Dr. Velez spent 6 to 8 hours per week, and Dr. Remler spent only 1 to 2 hours per week. In addition, the activity has a substantial personal aspect--petitioners devoted this time to GJR, their son. We find that petitioners did not devote a significant amount of time to the special education activity. These facts weigh in favor of respondent.

4. <u>Expectation That Assets Used in Activity May Appreciate in Value</u>

The expectation that assets used in the activity will appreciate in value sufficiently to lead to an overall profit when netted against losses may indicate a profit motive. Sec. 1.183-2(b)(4), Income Tax Regs.; <u>Engdahl v. Commissioner</u>, <u>supra</u> at 668-669; <u>De Mendoza v. Commissioner</u>, <u>supra</u>. Petitioners had no assets devoted to the special education activity. This fact is neutral.

5. <u>Success of Petitioners in Carrying on Other Similar or Dissimilar Activities</u>

The fact that the taxpayer has engaged in similar activities in the past and converted them to profitable enterprises may indicate that he engaged in the present activity for profit.

Sec. 1.183-2(b)(5), Income Tax Regs.; Lundquist v. Commissioner, supra; De Mendoza v. Commissioner, supra. Petitioners testified that Dr. Remler has a history of receiving grants in medicine and Dr. Velez runs a successful surgery practice. We find that petitioners' successes in the medical world do not necessarily translate into successfully running their special education activity. See Hastings v. Commissioner, T.C. Memo. 2002-310. These facts are neutral.

6. Petitioners' History of Income or Losses With Respect to the Activity

A series of losses during the initial or startup stage of an activity may not necessarily be an indication that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs.; Engdahl v. Commissioner, 72 T.C. at 669; Dworshak v. Commissioner, supra; De Mendoza v. Commissioner, supra. Petitioners had losses from their special education activity during the years in issue. However, these losses were during the initial or startup stage of the activity. This fact is neutral.

7. The Amount of Occasional Profits, If Any, Which Are Earned

The amount of profits in relation to the amount of losses incurred may provide a useful criterion in evaluating whether the taxpayer engaged in the activity for profit. Sec. 1.183-2(b)(7), Income Tax Regs. Petitioners did not earn any profits during the

years in issue. This fact weighs in favor of respondent. However, because petitioners' special education activity was in the startup stage, we do not give this factor much weight. See Vitale v. Commissioner, T.C. Memo. 1999-131, affd. 217 F.3d 843 (4th Cir. 2000).

    8.   The Financial Status of Petitioners

Substantial income from sources other than the activity may indicate that the taxpayer is not engaged in the activity for profit, particularly if the losses generate substantial tax benefits. Sec. 1.183-2(b)(8), Income Tax Regs.; Hastings v. Commissioner, supra; Lundquist v. Commissioner, supra. Petitioners reported adjusted gross income of $229,665 and $229,219 in 1999 and 2000, respectively. Petitioners deducted the losses at issue from their taxable income, thus generating substantial tax benefits. These facts weigh in favor of respondent.

    9.   Elements of Personal Pleasure or Recreation

The presence of personal or recreational motives in conducting an activity may indicate that the taxpayer is not conducting the activity for profit. Sec. 1.183-2(b)(9), Income Tax Regs.; Hastings v. Commissioner, supra; Lundquist v. Commissioner, supra. However, the fact that the taxpayer derives personal pleasure from engaging in the activity does not show that the taxpayer lacks a profit objective if the activity is, in

fact, conducted for profit as evidenced by other factors.  Sec.
1.183-2(b)(9), Income Tax Regs.

While petitioners testified that they hoped to make a
profit, petitioners also testified that the purpose of their
special education activity was to provide GJR, their son, with an
education that met his needs as an autistic child.  Taking into
consideration the factors discussed above, we find that
petitioners' predominate motive for undertaking the special
education activity was personal.  These facts weigh in favor of
respondent.

In summary, the only factor indicating a profit motive is
petitioners' expertise in dissimilar activities.  This factor is
heavily outweighed by the manner in which petitioners conducted
the activity, the time and effort they expended, the lack of
occasional profits, petitioners' financial status, and their
personal motive.  We hold that petitioners did not engage in the
special education activity for profit during the years in issue
within the meaning of section 183.

B.   Section 6662(a) Accuracy-Related Penalty

The second issue is whether petitioners are liable for an
accuracy-related penalty.  Respondent determined that petitioners
were liable for a penalty of $42 under section 6662(a) for 2000
based on petitioners' omission of their State income tax refund
from their return for 2000.

Section 6662(a) imposes an accuracy-related penalty of 20 percent of the underpayment of tax attributable to negligence or disregard of rules or regulations. Sec. 6662(a) and (b)(1). Negligence is defined as "any failure to make a reasonable attempt to comply with the provisions of this title". Sec. 6662(c). However, no penalty will be imposed if the taxpayer had reasonable cause for the underpayment of tax and the taxpayer acted in good faith. Sec. 6664(c); sec. 1.6662-3(a), Income Tax Regs.

The Commissioner bears the burden of production with respect to penalties. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). However, the taxpayer must show that he had reasonable cause and acted in good faith. See Rule 142(a).

The parties stipulated that petitioners received, but did not report, a State income tax refund of $3,249 in 2000. We find that respondent has met his burden of production. Petitioners have presented no evidence that their omission of the State income tax refund from their 2000 return was the result of reasonable cause. Accordingly, we hold that petitioners are liable for the accuracy-related penalty pursuant to section 6662(a).

In reaching our holdings, we have considered all arguments made, and, to the extent not mentioned, we conclude that they are moot, irrelevant, or without merit.

To reflect the forgoing and the concessions of the parties,

<u>Decision will be entered under Rule 155</u>.